[Goodloe v. Memphis & Charleston Railroad Co.]

# Goodloe v. Memphis & Charleston Railroad Co.

*Action for Damages for Personal Injury.*

1. *Liability of master for wilful act of servant causing injury to another.*—When the servant is in the performance of his master's orders, or authorized acts, and in the doing thereof, conducts himself so negligently or unskilfully that injury results to another, the doctrine of *respondeat superior* applies; but for the acts of the agent, wilfully and intentionally done, without the command or authorisation of the master, the servant, and not the master, is liable.

2. *Same.*—The rule of *respondeat surperior* has no application where the servant actually wills and intends the injury and steps aside from the purpose of the agency committed to him, and commits an independent wrong.

3. *Same; case at bar.*—Where at a station platform on defendant's road, one of defendant's servants, while engaged in a playful scuffle, was unintentionally pushed against plaintiff, who had purchased a ticket, and was preparing to go upon the train, thereby causing him to fall from the platform and sustain injuries; the conduct of defendant's employes was not fairly incident to their employment, and defendant was therefore not liable.

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. H. C. SPEAKE.

This was an action on the case, brought by the appellant, J. C. Goodloe, against the appellee, the Memphis & Charleston Railroad Company, to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant, or its servants or employes. The ground of complaint against the defendant is thus stated in plaintiff's complaint: "The plaintiff became and was a passenger of and on the railroad of the defendant, and thus being a passenger of the defendant, the defendant, by its servants, without any cause or necessity therefor, and contrary to its duty to the plaintiff, did assault the plaintiff, and with violence did push him, so that he was pushed and thrown from the platform of the station at said station of Tuscumbia, over which plaintiff was walking to take passage on the train then about to leave said station in

[Goodloe v. Memphis & Charleston Railroad Co.]

the direction of Barton, a station on said railroad, where
the plaintiff as such passenger was then going, and was
thereby thrown with violence to the ground, and the
plaintiff's leg was broken, and the plaintiff alleges that
said injury was caused by the negligence of the defend-
ant."

The facts, bearing upon the only question considered
by the court on the present appeal, are sufficiently
stated in the opinion.   Upon the introduction of all the
evidence, the court, at the request of the defendant,
gave the general affirmative charge in its behalf; and
to the giving of this charge the plaintiff duly excepted.
There was judgment for the defendant; and the plain-
tiff appeals, and assigns as error, among other rulings
of the trial court, the giving of the general affirmative
charge in favor of the defendant.

JACKSON & SAWTELLE and J. H. NATHAN for the ap-
pellant.—The relation of carrier and passenger begins,
when, a contract of carriage having been made, or the
passenger having been accepted as such by the carrier,
or, having the *bona fide* intention of taking passage by a
particular train, he has come, within a reasonable time,
before the expected arrival of the train, upon the car-
rier's premises; and that relation continues, until his
journey is completed.   To him, then, the premises of
the carrier, with its buildings and approaches, grounds,
modes of ingress and egress to its grounds and stations
and trains should be a place of security from injury; in
some instances coming even from strangers; in all cases
coming from the carrier's own agents and servants. 2
Am. & Eng. Ency. Law, pp. 744–5; *Batton v. S. & N.
R. R. Co.*, 77 Ala. 593; 2. Rorer on Railroads, 951; *A.
G. S. R. R. Co. v. Arnold*, 80 Ala. 607.   Appellant being
a passenger, and, when injured, still within the circle
of protection, the duty of the carrier to him required of
it the exercise of the highest degree of care for his safe-
ty.—*Christie v. Griggs*, 2 Camp. 79; *Sharp v. Gray*, 9
Bing. 457; *F. & St. L. R. R. Co. v. Horst*, 93 U. S.
291; *M. & M. R. R. Co. v. Blakely*, 59 Ala. 477; *Penn.
R. R. Co. v. Roy*, 102 U. S. 451; *Tanner v. L. & N. R.
R. Co.*, 60 Ala. 621; *B. & O. R. R. Co. v. Worthington*,
21 Md. 275.   While he was such passenger, he was in-
jured by the servant of the carrier, and the appellee is

liable in this action.—*Snow v. Pittsburg Railroad Co.*, 136 Mass. 552; *Ramsden v. Boston Railroad Co.*, 104 Mass. 117; *L. & N. R. R. Co. v. Kelley*, 13 Am. & Eng. R. R. cases, 1; Hutch. on Carr. (2d Ed.) § 595, *et seq.*; *Goddard v. Railway Co.*, 57 Mo. 202; *Hanson v. Railway Co.*, 62 Me. 84.   Under the facts of this case the appellant claims that, as to him, the servant was in the course or scope of his duty, and that it can make no difference, if the act of the servant was unauthorized by the carrier, or even contrary to its orders.   It is insisted by counsel for appellee, that "scope of duty" means the limits of exact and correct performance by the servant or agent of his employment; but it is manifest that, if such were the construction of it, there could never be any liability of the master for the negligence or misconduct of his servant.   Webster defines "scope" as the ultimate design, aim, or purpose; intention; drift; object. If one is engaged in carrying out the purpose, or object, for which he was employed, he is acting within the scope, the area, of his duty.   The better form of expression often used, as fixing the limits of the liability of the master for the action of the servant, is, "course of employment."   In that sense it is used in many cases, and in those most approved.—*Mulligan v. N. Y. & R. B. R. R. Co.*, 129, N. Y. 512.

The master is liable for the wongful act of the servant resulting in injury to the passenger, where the servant is engaged at the time in doing his master's business, and is acting within the general scope of his authority, although he is reckless in the performance of his duty, or through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances, goes beyond the line of his duty, and inflicts unnecessary, heedless or unjustifiable injury.—*Cohen v. Dry Dock &c. Co.*, 69 N. Y., 170; *Rounds v. Delaware &c. Co.*, 64 N. Y., 129; *Ga. Pac. Ry. Co. v. Propst.*, 83 Ala., 518; *Western R. R. Co. v. Turner*, 72 Ga., 292; *Johnson v. Chicago, &c., R. R. Co.*, 58 Iowa, 348.   The master is liable for a wrong done a passenger by his servant, whether through negligence or the malice of the latter, *in the course of an employment in which the servant is engaged to perform a duty which the master owes to the person injured.*—*Craker v. Chicago &c. R. R. Co.*, 36 Wis., 657; *Smith v. Manhattan R. R. Co.*, 45 N. Y., 865.

The rule of "line of duty" does not mean that the servant must be doing his duty properly. But in the case of passengers, the master would be liable, because the servant did a wrongful act while in the discharge of his duty and service.—*North Western R. R. Co. v. Hack*, 66 Ill., 238; *Nashville &c. R. R. Co. v. Starnes*, 9 Heisk. 52; *Louisville &c. R. R. Co. v. Douglass*, 69 Miss., 723. The test is: Was the act done by the servant, whether of omission or positive wrong, committed in the performance of service, with which the servant is charged, and for which he was employed. If so, the carrier cannot escape liability, although the servant was not ordered by the master to do the injurious act, and although he disobeyed the master's express instructions.—*Bayley v. M. G. & L. R. R. Co.*, L. R. 7, C. P., 415; *Peck v. N. Y. &c. R. R. Co.*, 70 N. Y., 587; *Penn. R. R. Co. v. Vandiver*, 42 Pa. St., 365; *Atchison, Topeka & Sante Fe Railroad Company v. Johns*, 34 Am. & Eng. Railroad cases, 484; *Lakin v. Or. Pac. Ry. Co.*, 34 Amer. & Eng. R. R. cases, 509. Note to *Carpenter v. B. & A. R. R. Co.*, 21 Am. & Eng. Railroad Cases, 336; *Dwinelle v. N. Y. C. & H. R. R. Co.* 120 N. Y., 125; *Weed v. P. R. R. Co.*, 17 N. Y., 362. These and numerous other cases hold that no matter what the motive is which incites the servant of the carrier to commit an unlawful or improper act toward the passenger during the existence of the relation of carrier and passenger, the carrier is liable for the act and its natural and legitimate consequences.—*C. & E. R. R. Co. v. Flexman*, 103 Ill., 546.

It can make no difference that the injury was caused by the act of the porter of the Pullman car attached to the train. He was *pro hac vice* the servant of the carrier. The decisions are uniform, that he is to be considered the carriers servant, and it is liable for his as for any other servant's act under such circumstances. *Williams v. Pullman Co.*, 33 Am. & Eng. R. R. Cases, 409; *Thorpe v. R. R. Co.*, 76 N. Y., 402; *Penn. R. R. Co. v. Roy*, 102 U. S., 451; 3 Wood's Ry. Law, sec. 466, p. 1442; *Dwinelle v. N. Y. C. & H. R. R. Co.*, 120 N. Y., 123.

HUMES, SHEFFEY & SPEAKE for the appellee.—There was no conflict in the evidence, and the court gave the general charge in favor of defendant. This was prop-

erly done, the rule being that the master is held liable for the tortious acts of his servant when (and *only when*) done within the range of his employment, or in other words, when and only when the tortious act was done, while the servant was engaged in and about the business, for which he was actually employed by the master and said act was within the range and scope of the servant's employment, and in the prosecution of said business.—Cooley on Torts, pp. 335, 535, 537, note 1; *A. G. S. R. Co. v. Frazier*, 93 Ala., 48; *Gilliam v. R. R. Co.*, 70 Ala., 268; *B. W. W. Co. v. Hubbard*, 85 Ala., 179; *M. & O. R. Co. v. Seals*, 13 So. Rep., 917; Wood's Law Master & Serv., 580-1; *R. R. Co. v. Baum*, 26 Ind., 70; *Pittsburg R. Co. v. Donahue*, 70 Pa. St., 119; 21 Am. Rep., 597; *Wright Rounds v. R. R. Co.*, 64 N. Y., 129; 30 N. W. Rep., 148; *Higgins v. Waterwich Turp Co.*, 46 N. Y., 423; *Little Miami R. Co. v. Wetmore*, 19 Ohio St., 110; *Isaacs v. 3rd Ave, R. R. Co*, 47 N. Y., 122; *Jackson v. 2d Ave. Ry. Co.*, 47 N. Y., 274; *Cohen v. Dry Dock, etc. R. R. Co.*, 69 N. Y., 170. If the servant step aside from his master's business for however short a time, to do an an act not connected with such business, the relation of master and servant is for the time suspended, and an act of the servant during such interval is his own.—14 Am. & Eng. Ency. of Law, p. 809, sec. 5 and note 2; *L. & N. R. R. Co. v. Whitman*, 79 Ala., 328; *Gilliam v. S. & N. R. R. Co.*, 70 Ala., 268. The principle for which we contend is well stated in *Isaacs v. 3rd Avenue R. R. Co.*, 47 N. Y., 122. Whenever an injury has been caused by the conduct of a servant in the business of his master, and within the scope of his employment, the master has been held liable although such conduct may have been tortious. The question of liability does not depend entirely on the quality of the act, but rather upon the other question whether it has been performed in the line of duty and within the scope of the authority conferred by the master. When the act of the servant, whether trespass or otherwise, is without the authority either expressly conferred upon the servant, or implied from the nature of the employment and character of the duties, and causes injury to others, the master is not answerable. It is said that the implied authority in the servant is limited to those acts which the master could himself do, if

present, and if in the performance of such acts, the servant misconducts himself, the master will be liable. The rule above announced is applicable to injuries to passengers as well as to trespassers.—2 Am. & Eng. Ency. of Law, pp. 753-4, and numerous cases cited in Notes 3, 4 and 5. Although the plaintiff may be considered as a passenger, yet the measure of duty which the defendant owed him was not so great before he boarded the train as afterwards, for reasons of a manifest nature.—*Batton v. S. & N. R. R. Co.*, 77 Ala., 591. Although it is the duty of a railroad company as a common carrier to protect its passengers, and especially female passengers, against violence or disorderly conduct on the part of its own agents and servants, other passengers and strangers when such violence or misconduct may be reasonably anticipated and prevented; yet it is not liable when it is not shown that the company had notice of any facts which justified the expectation of such an outrage.—*Batton v. S. & N. R. R. Co.*, 77 Ala., 591. It is not every employe who is bound to protect passengers : if an employe whose duties are *confined* to another branch of the carrier's business, fails to interfere and protect a passenger who is being insulted, the company is not liable, unless some officer or agent of the company knew it at the time ; a carrier's servant, when acting outside of the particular branch of service for which he is employed, is a stranger to the carrier, and the latter is not bound by his acts or failure to act, it is not required by law that a carrier police its stations to provide against unusual and extraordinary occurrences which in no event could have been anticipated.

HARALSON, J.—We examine the single question presented by the defense and alone considered by the appellant; that the defendant is not guilty for the reason that the injury complained of was not inflicted on plaintiff by the defendant's servant's or employes, while they were acting within the range but outside of the authority conferred by defendant on them. Other errors assigned are not insisted on in the argument filed, and are, therefore, treated as waived.

The question presented has been well considered by this and many other courts. It was recently before us

in the case of *Lampkin v. The L. & N. R. R. Co.*, 17 So. Rep. 448, in which, as the result of the authorities there cited, it was stated as the well settled rule, that the carrier's obligation was to protect its passengers against the violence and insults of its own servants and of strangers and co-passengers; that a contract exists between a common carrier and its passengers, to use all reasonable exertion to protect them from injury from fellow passengers and its agents in charge of the train. In an earlier case, it was said, that "the clearly established doctrine now is, that railroad corporations are liable for all acts of wantonness, rudeness or force, done or caused to be done by their agents or employes, if done in and about the business or duties assigned to them by the corporation; and the rule of vindictive or punitive damages against such corporations for abuse by their employes of the duties and powers confided to them, is the same as that, which applies to natural persons, who are guilty of such misconduct. It is confined however, to abuses perpetrated in the line of duties assigned to them, and does not extend to any tort, wantonness or wrongful act the employes may commit in matters not connected with the service of the railroad corporation. In the line of their assigned duties, they stand in the place of the corporation; without that line, the corporation is bound by nothing they may do,"—*L. & N. R. R. Co. v. Whitman*, 79 Ala., 239. The same principle had been differently but very clearly expressed in *Gilliam v. Railroad Co.*, 70 Ala., 268; "that if the employe, while acting within the scope of the authority of the employment, do an act injurious to another, either through negligence, wantonness or intention, then for such abuse of authority conferred upon him, or implied in his employment, the master or employer is responsible in damages to the person thus injured. But, if the agent go beyond the range of his employment or duties, and of his own will do an unlawful act injurious to another, the agent is liable, but the master is not."

The principle settled in these and many other similar adjudications, is not disputed, but its application to the cases as they occur, gives rise to continued disputations. What is meant by the words "while acting within the range of the authority of the employment of the servant," is made the ground for contention in each case.

[Goodloe v. Memphis & Charleston Railroad Co.]

But, that seems, also, to be well settled on authority, and while it is often a matter of nice adjustment to the facts of a case, it has been made clear enough, not to be of very difficult application. It is said, on the point under consideration, that the rule of the responsibility of the master for the acts of his servant, "does not apply simply from the circumstance that at the time when the injury is inflicted the person inflicting it was in the employment of another; but that, in order to make the master liable, the act inflicting the injury must have been done in pursuance of an express or implied authority to do it. That is, *it must be an act which is fairly incident to the employment*; in other words, an act which the master has set in motion." * * "And generally, where the injury results from the execution of the employment, the master is liable." 2 Wood on Railroads, § 316. In explanation of the rule, this court long ago held, as the result of the authorities examined and cited, that when the servant is in the performance of his master's orders, or authorized acts, and in the doing thereof, conducts himself so negligently or unskillfully that injury results to another, then the doctrine of *respondeat superior* applies, and the master will be liable in an action on the case, but that, for the acts of the agent, willfully and intentionally done, without the command and authorization of the master, the servant, and not the master is liable: and that the rule has no application when the servant actually wills and intends the jury, or steps aside from the purpose of the agency committed to him, and inflicts an independent wrong.—*Cox v. Keahey*, 36 Ala., 340. So, we find it held, that where a slave, being a passenger on a steamboat, was wounded by a gun negligently discharged by the second engineer of the boat; the captain, in an action against him for the injury, was held not to be liable, because the discharge of the gun by the engineer, was not an act done in the course of his employment, or in the discharge of any duty connected with the service.—*McClenaghan v. Brock*, 5 Rich. L. (S. C.) 17. And, where a servant employed to light fires in a house, lighted furze and straw, in order to clean a chimney that smoked, and the house caught fire therefrom and was destroyed, it was held, that the act of cleaning the chimney in the manner stated, was one outside the scope of her employment,

and the master was not liable.—*McKenzie v. McLeod*, 10 Bing., 385. And still again, in a recent case, where an employe, who being behind in his accounts, was suspected of setting fire to the building in which he was employed, in order to destroy the evidence of his default, we said, that there was no evidence tending to show, if the employe did set fire to the building, that it was a negligent act of his, done while in the performance of his duty, and that, if he did it it all, it was his own tortious, wicked act, done outside the line of his employment, in which the defendant did not participate, or afterwards, in any manner ratify, and for which it was not in any manner responsible.—*Collins v. A. G. S. R. R. Co*, 16 So. Rep., 142.

In the case before us, the evidence shows, that the appellant purchased a ticket at Tuscumbia, from the defendant company, to go as a passenger on its train to his home at Barton, and tarried in the waiting room until the arrival of the train, when he left the waiting room, went on the platform along the side of the train, and proceeded to the point, at which he could enter the passenger coach, and when near the entrance of the coach, as he expressed it, he "was struck against, quartering on his back and shoulder with such force as to knock or push him off the platform on the south side of it, and fell to the ground, breaking his left leg," &c.

McCormick, a witness for defendant, testified, that he was supervisor of the middle division of the defendant's railroad, from Corinth to Decatur, and was going over his division on the train which plaintiff was about to enter, when he was hurt; that he had nothing to do with the train as an employe ; that he had gotten off on its arrival, and gone to the train dispatcher's office to see if he had any message for him, and on his return, he found Mr. Porterfield, the road master of defendant, and Mr. Jones, the sleeping car conductor, in conversation with each other, on the platform. Mr. Porterfield asked witness, if he had ever met Mr. Jones, to which witness made a playful remark, to the effect that he did not want to know him, at the same time making a lick at him with his hand, when Jones threw up his hand, as if to ward off the blow, and knocked or pushed witness against the plaintiff, which caused him to fall off the platform, and injure himself. Jones, the Pullman

16

conductor, gave substantially the same account of the transaction.    There was no evidence, that either had ill will towards plaintiff, or intended to do him any harm. McCormick knew him well and was friendly with him, and Jones did not know him at all.    The evidence also shows, that McCormick and Jones were friends, and what occurred between them was in sport.

What these parties did to cause plaintiff's injury, was not in the line of their respective engagements, or that of either of them, to their employer; it was not fairly incidental to their employment; it was not done in pursuance of an express or implied authority from the master to do it; it was the result of the conduct of these employes who, in the commission of the injurious act, however innocently done, had stepped aside from the purposes of the agency committed to them, and inflicted an independent wrong on the plaintiff; and they, if anybody, and not the defendant company, are liable for it.

Affirmed.