# Case *v.* Hulsebush.

*Action to recover Damages for Personal Injuries.*

1. *Liability of employer for wrongful acts of agent or employe.*— An employer is liable for all acts of wantonness, rudeness, or force, done or caused to be done by his agents or employés, if done in or about the duties assigned to them by the employer.

2. *Same; liability of tax collector for personal injuries inflicted by his deputy.*—A tax collector is liable for personal injuries inflicted by his deputy while in the discharge of his duties, in the same way as any other employer would be liable for injuries inflicted by his employé.

3. *Same; liability of tax collector for personal injuries inflicted by his deputy.*—Where a deputy tax collector, under color of his office wrongfully and illegally endeavors to collect for the tax collector a fee from a tax payer which had been illegally charged against him, and as a result of such effort. a difficulty ensues betwen the deputy tax collector and said tax payer in which the deputy tax collector curses and abuses the tax payer, and inflicts injuries upon him. the tax collector is liable in damages for such personal injury.

[Case v. Hulsebush.]

4. *Same; res gestae.*—Where in an action against a tax collector, to recover damages for personal injuries inflicted upon the plaintiff by the collector's deputy, it is shown that upon the plaintiff's going to the office of the tax collector, his deputy, under color of his office, wrongfully and illegally endeavored to collect for the tax collector a fee from the plaintiff, which was not legally due, and refused to accept the payment of plaintiff's taxes without the payment of such fee, whereupon the plaintiff left the office and upon returning within a short time told the deputy that his attorney had stated that he was not liable for the fee attempted to be collected, and during this conversation a dispute arose, wherein the plaintiff questioned the deputy's veracity, and thereupon the deputy assaulted the plaintiff and inflicted the injuries complained of,— in such case the first and second interviews between the plaintiff and the deputy tax collector, both relating to the same matter, constitute one and the same transaction, and all that was said and done is the *res gestae* of the difficulty; and the difficulty having arisen from the deputy's effort to unlawfully collect a fee, renders his employer liable for the injuries inflicted.

5. *Liability of employer for acts of employe; charge to the jury.*— In an action against an employer to recover damages for personal injuries inflicted by the defendant's employe, a charge which instructs the jury that in order to find a verdict for the plaintiff they must find that the employe of the defendant "acted within the scope of his employment in committing the alleged assault and battery upon the plaintiff," is properly refused as being misleading; since such charge should have hypothesized that it was necessary to appear that the employé committed the act within the scope of his employment and in the accomplishment of the objets within the line of his duties, or that it was committed in and about the business of the duties assigned to him by his employer.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

This action was brought by the appellee, John G. Hulsebush, against the appellant, John Case. The facts of the case are sufficiently stated in the opinion.

The court, at the request of the plaintiff, gave to the jury the following written charge to the giving of which the defendant duly excepted: "If the jury believe from the evidence that Duncan Case refused to accept the payment of plaintiff's taxes unless he would also pay the collector's fees and that a discussion arose over this mat-

ter; that plaintiff went off and came back and again offered to pay his tax without the collector's fee, and that Duncan Case would not receive them and became angered at such offer, and on that account began to curse and abuse plaintiff and this led to his assaulting the plaintiff, then you ought to find for the plaintiff."

The court at the request of the defendant gave to the jury the following written charges: (4.) "The jury are charged that unless they are reasonably satisfied from the evidence before them in this cause that the assault and battery alleged to have been committed by Duncan P. Case upon the plaintiff in this cause was committed in the attempt of said Case to collect a fee alleged to be due from the plaintiff as a tax payer, which said fee the said Duncan P. Case by virtue of his employment as a deputy tax collector was authorized to collect, and which was an unlawful charge against the plaintiff, they must find for the defendant." (5.) "The jury are charged that if they shall be reasonably satisfied from the evidence that the alleged assault and battery by Duncan P. Case upon the plaintiff in this cause was the result of malice, vexation or wantonness on the part of said Duncan P. Case, they must find a verdict for the defendant, notwithstanding the fact that the said Duncan P. Case was in the employ of the defendant when he so assaulted and beat the plaintiff, unless they shall be reasonably satisfied from the evidence that the defendant authorized or participated in such act, or that said assault was committed while acting within the scope of the employment of said Duncan P. Case." The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that if they believe the evidence, they must find for the defendant." (2.) "The court charges the jury that if they shall find from the evidence that the assault and battery alleged to have been committed by Duncan P. Case upon the plaintiff was caused by a question of veracity between the said Duncan P. Case and the plaintiff, and not on account of said Duncan P. Case endeavoring to collect an illegal fee from the plaintiff for the defendant, the said Duncan P. Case was not act-

ing within the scope of his employment by the defendant, and they must find a verdict for the defendant." (3.) "The court charges the jury that in order to find a verdict for the plaintiff in this cause, they must find that the said Duncan P. Case alleged in the complaint to be an employé of the defendant, acted within the scope of his employment in committing the alleged assault and battery upon the plaintiff, and if they shall find from the evidence that the said Duncan P. Case departed therefrom in committing said assault and battery, they must find their verdict for the defendant." (6.) "The court charges the jury that if they shall find from the evidence that the assault and battery alleged to have been committed by Duncan P. Case upon the plaintiff was caused by a question of veracity between the said Duncan P. Case and the plaintiff, and not on account of said Duncan P. Case endeavoring to collect an illegal fee from the plaintiff for the defendant, they must find for the defendant."

The defendant reserved an exception to a separate portion of the court's general charge to the jury; but it is unnecessary to set out this portion of said charge.

There were verdict and judgment for the plaintiff, assessing his damages at $250. The defendant appeals, and assigns as error the rulings of the trial court upon the charges to which exceptions were reserved.

BESTOR & GRAY and R. H. & N. R. CLARKE, for appellant. The plaintiff must prove the material allegations of his complaint. The allegations that said Duncan P. Case "wrongfully and illegally endeavored to collect said fee," and "because plaintiff lawfully refused to pay" the same are material, and must be strictly proven to entitle the plaintiff to a verdict.—*Kitchens v. Elliott*, 114 Ala. 290; 1 Greenleaf on Evidence, (15th ed.), § 56; 4 Encyc. Pl. & Prac. 610. No evidence at all was introduced by the plaintiff tending to show that Duncan P. Case was "endeavoring to collect" said fee and assaulted the plaintiff "because" he "lawfully refused to pay" it.

Clearly there is a fatal variance between the allegations of the complaint and the proof, which entitled defendant to the general charge.—*Lee v. Wimberly*, 102 Ala. 539; *Rogers v. Jones*, 51 Ala. 353.

The second, third and sixth charges requested by the defendant each stated correct propositions of law bearing upon this case, and were supported by the evidence not only of the defendant and his witnesses, but by the evidence introduced by the plaintiff. The court erred in refusing them.—*Goodloe v. M. & C. R. R. Co.*, 107 Ala. 233; *Cox v. Keahey*, 36 Ala. 340; *A. G. S. R. R. Co. v. Frazier*, 93 Ala. 48; *Gilliam v. S. & N. Ala. R. R. Co.*, 70 Ala. 268; 14 Amer. & Eng. Encyc. of Law, 809, p. 5, n."

GREGORY L. & H. T. SMITH, *contra.*—Without impugning the doctrine of the case of *Goodloe v. M. & C. R. R. Co.*, 107 Ala. 238, it is believed that plaintiff's evidence made out a good case against the defendant, without reference to the allegations of the complaint. It was the duty of the deputy tax collector to collect plaintiff's taxes, and among the items placed by the tax collector upon the tax bill, was the tax collector's fee. It is true that it was his duty to make this collection by proper means, and not to use any abusive or insulting language, or violence of any kind, but the purpose of the abuse and violence was to accomplish the collection of the taxes, which was the service for which the deputy had been employed; and when a servant is performing the duties for which he has been employed, his master is responsible for the manner in which he performed them.

Although it is not the duty of a brakeman, in ejecting a trespasser from the train, to use undue violence, the company will be held responsible thereof.—*M. & O. R. R. Co. v. Seales*, 100 Ala. 368.

The complaint does not allege that in attempting to collect the illegal fee, the deputy was acting within the scope of his employment; it only alleges that he made the effort under color of his office, and that "because plaintiff lawfully refused to pay such illegal demand, the said Duncan P. Case cursed and abused plaintiff and assaulted and beat him." The defendant by pleading the general issue only, confined the issues to the facts alleged in the complaint.—*Pitts v. Dill*, 53 Ala. 644. And as there was evidence tending to sustain these allegations, the general charge in favor of the defendant was properly refused, even though the allegations of the com-

plaint were sufficient to make out a good cause of action.—*Andrew Manufacturing Co. v. Porter*, 112 Ala. 381; *Richardson v. Stephens*, 114 Ala. 242; *Sharpe & Son v. Burney*, 114 Ala. 362; *Western Rwy. Co. v. Walker*, 113 Ala. 274; *Brown v. Bamberger*, 110 Ala. 353.

HARALSON, J.—The liability of a master for the wrongful acts of his agents and servants, whether the master is a natural person or a corporation, makes no difference, is a question which has been repeatedly before this court, and is well settled.

In *L. & N. R. R. Co. v. Whitman*, 79 Ala. 328, it is, perhaps, as well settled as elsewhere, and for the purposes in hand we extract what was there said, in consonance with previous and following adjudications of this court on the subject, viz.: "The clearly established doctrine now is, that railroad corporations are liable for all acts of wantonness, rudeness or force, done, or caused to be done, by their agents or employés, if done in and about the business or duties assigned to them by the corporation; and the rule for vindictive or punitive damages against such corporation, for abuse by their employés of the duties and powers confided to them, is the same as that which applies to natural persons, who are guilty of similar misconduct. It is confined, however, to abuses perpetrated in the line of duties assigned to them, and does not extend to any tort, wantonness, or wrongful act the employés may commit, in matters not connected with their services to the railroad corporation. In the line of their assigned duties, they stand in the place of the corporation; without that line, the corporation is bound by nothing they may do."—*Goodloe v. M. & C. R. R. Co.*, 107 Ala. 233; *Lampkin v. L. & N. R. R. Co.*, 106 Ala. 287; *Collins v. A. G. S. R. R. Co.*, 104 Ala. 390; *M. & O. R. R. Co. v. Seales*, 100 Ala. 368; *Gilliam v. S. & N. A. R. R. Co.*, 70 Ala. 268; *Cox v. Keahey*, 36 Ala. 340.

The complaint in this case, after stating that defendant was the tax collector of Mobile county, and that Duncan P Case, his son, was one of his deputy tax collectors, charges that "said Duncan P. Chase as such deputy tax collector, and under color of his office, wrong-

[Case v. Hulsebush.]

fully and illegally endeavored to collect, for his said father and tax collector, a fee from the plaintiff, which the defendant in person, or through others, had wrongfully and illegally charged against plaintiff as a tax payer, and because plaintiff lawfully refused to pay such illegal demand, the said Duncan P. Case cursed and abused plaintiff and assaulted and beat him with an inkstand and hurt him," etc.

It was shown that the defendant was absent from his office when the difficulty between plaintiff and his son, Duncan P., occurred, and it was admitted that the 50 cents tax collectors' fee was am improper charge against plaintiff. The tax collector examined as a witness explained how the fee came upon the slip made out showing plaintiff's taxes, and that it was not his intention to claim it unless it became due by default, and to strike it out if paid before default.

The plaintiff testified in substance that he went to the tax collector's office in October, 1898, to pay his taxes, when Duncan P. Case came forward to wait on him; that Case handed him the tax-slip, and after overlooking it, witness said to him: "This is all very well with the exception of this extra 50 cents. You don't want that, do you?" Case replied, "Yes, I do, you have to pay that." Witness said, "I don't think so." Case said "Explain yourself." Witness answered: "I am not positive, but as well as I can see, my judgment is that the tax collector has not made his second round in the ward to collect his taxes, and furthermore, I have not received any official notice in regard to my taxes, and for that reason, I thought I was exempt from that tax fee for the collection;" that said Case then said in a boisterous manner: "No, your taxes have been due since the first of October, and he (would) be damned if I could bulldoze the office." Witness replied: "If that was the case, he would not pay any," and proceeded to fold up the tax slip and walk away, when Case said: "Hold on, damn you, if you don't want to pay your taxes, you can't take that out of the office either," when witness replied, "very well," and flung the bill on the counter, and walked out; that he went to the office of Dermant & Duggan, and asked Duggan what he thought of it, explaining to him what had occurred; that Duggan thought witness was entitled to the deduction, but to be positive, he rang up and confer-

red with Mr. Gray, and told witness that he was not liable for the fee, and to tell young Case what Gray said; that witness returneed to the tax collector's office accompanied by Mr. Duggan, who went at his request; that on reaching the office he said to Case: "I have again come to proffer you payment of my tax less the collector's fee, as I have been advised through Mr. Gray, you are not entitled to the collector's fee at this time," when Case got boisterous and said: "He didn't give a G—— d—— for witness or Mr. Gray either, and furthermore, he didn't propose to let such d——d things as witness bulldoze that office, and wanted witness to distinctly understand that he and not witness was running that office." Witness replied that he had not come for trouble, but that he proposed to pay him what he was entitled to and no more, when Case replied, if he (witness) had not been so G—d — bulldozing when he first came in, he (Case) would have given witness the tax slip and let him go to the ward and have the fee deducted. Witness replied: "To the contrary, young man, you refused to let me retain the tax slip;" that Case replied: "You mean to call me a damn lie?" and witness said: "I don't mean to imply anything at all, but you can take my word as you see fit." Case then said something else, hurling an inkstand at witness hitting him a glancing blow on the arm, etc.

On cross-examination, witness testified that at the time the ink-stand was thrown, the controversy was not whether Case had given witness the bill or not, that the controversy was caused by whether he (witness) meant to insinuate that he had called Case a d—n liar; that was what the controversy was and nothing in regard to the bill at all; that it was simply in regard to his calling Case a liar.

Mr. Duggan testified, corroborating substantially the testimony of plaintiff as to the difficulty. He stated that as he understood it, the fuss grew out of the words, "do you mean to insinuate I am a liar," and what immediately led up to this was Case saying, "If you had come in here in the right kind of manner the first time."

Duncan P. Case testified for the defendant, giving his account of the first interview between plaintiff and himself, quite differently from that given by plaintiff; his

testimony tending to show that he was not rude or offensive to plaintiff, but that plaintiff was offensive in manner to him. He testified as to the second interview, substantially, that when plaintiff returned with Duggan, he said: "Look here, I have been down to see Mr. Gray about this matter, and he told me you were not entitled to any fee on it," and that he, Case, replied: "It was not necessary to come down to Mr. Gray," and "Oh damn you and Mr. Gray both," stating, "I gave you the bill here;" that plaintiff replied, "You didn't give me the bill," when witness said, "Yes, I did," and plaintiff said, "No ,you did not," when witness said, "You mean to say I am a liar," and plaintiff replied, "If you want to take it that way, let it go," when witness picked up the ink bottle and threw it at plaintiff. He also testified that when he threw the bottle, nothing was said about the fee, and that his father, the defendant, when he left had instructed him and the other deputies to take off all collector's fees from bills paid before his appointment.

We have been thus particular to set out at length the allegations of the complaint and evidence in the cause, that we may the better apply the rulings of the court thereto.

We have no difficulty in holding the first and second interviews between the plaintiff and Duncan P. Case as so near together, and all relating to the same matter, as one transaction, and that all that was said and done between them on the occasions were of the *res gestae* thereof. It all grew out of the fifty cent tax fee, and tends to establish the averments of the complaint.

The charge given by the court at the request of the plaintiff was based on evidence introduced on the trial, not incorrectly hypothesized, and was properly given.

Charges *Fourth* and *Fifth*, given for defendant, contained the law of the case, as fully, and certainly as fairly as could be expected or required.

There was no place for the general charge numbered 1, requested by defendant.

When considered with reference to the complaint and the evidence, we discover no error in the refusal to give the remaining charges requested by the defendant, numbered 2, 3 and 6. The 2d and 6th were attempts to sepa-

rate the matter of Duncan P. Case's alleged effort to collect an illegal fee from the plaintiff, and the question of veracity that grew thereout between them, and to disconnect the two as different and independent transactions, so that if the first was a matter within the line of the deputy's duties, the latter was not, and therefore the employer was not liable for the tort of the deputy in such alleged independent and wholly personal matter. But the evidence does not admit of any such distinction. The 3d was faulty and misleading. It postulates that the said Duncan P. Case must have acted within the scope of his employment in committing the alleged assault and battery, to render the defendant guilty. It should have hypothesized, that it was necessary to appear that he committed the act within the scope of his employment and in the accomplishment of objects within the line of his duties, or, that it was committed in and about the business or duties assigned to him by his employer. The words, "within the scope of his employment" as employed in the charge, without more were not without confusing and misleading tendencies.—*L. & N. R. R. Co. v. Whitman,* 79 Ala. 328; *supra; Mobile & Ohio R. R. Co. v. Seales,* 100 Ala. 374.

Taken in its connection with the context of the main charge, and with the immediate connections with which it was given, that portion of it excepted to by defendant, contained no reversible error.

Affirmed.