(76 South. 28)

WELLS v. HENDERSON LAND & LUMBER CO. (6 Div. 497.)

(Supreme Court of Alabama. May 17, 1917. Rehearing Denied June 21, 1917.)

CORPORATIONS &lt;&#61;&gt;423 — LIABILITY FOR AGENT'S TORT—KILLING OF SERVANT.

Where the general agent or manager of defendant corporation in the work of constructing a railway shot and killed an employé after termination of a quarrel over whether the employé had performed his contract to build a part of the road, defendant company was not liable for its manager's act, since it was not in the line of his employment and duties.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1692–1695, 1903, 1906.]

Appeal from Circuit Court, Tuscaloosa County; A. S. Vandegraaf, Judge.

Action by Mrs. Bessie L. Wells, as administratrix, etc., against the Henderson Land & Lumber Company. From a judgment for defendant, plaintiff appeals. Affirmed.

H. A. & D. K. Jones and James Rice, all of Tuscaloosa, for appellant. Foster, Verner & Rice and Harwood, McKinley, McQueen & Aldridge, all of Tuscaloosa, for appellee.

McCLELLAN, J. This is an action for damages instituted by the appellant, for the wrongful killing of Thomas E. Wells, plaintiff's intestate. Wells was killed by A. G. Carter on July 4, 1916. Carter was at the time a general agent or manager in the employ of the appellee, defendant, in and over the work of constructing a railway for appellee in Tuscaloosa county. Wells was employed by the appellee, through Carter, to build, or to aid in the building of, a part of the railway. Wells went to Carter's "camp" to adjust and to collect his compensation for work done by Wells on the appellee's railway. Wells and Carter entered upon the business, with power to transact which Carter was fully commissioned by appellee, in a friendly spirit; but during the interview between them a dispute arose over the question whether Wells had performed his contract. When Wells asserted his belief that he had properly performed his contract with defendant, Carter replied that Wells was a liar, whereupon Wells assaulted Carter and bore him to the ground. Bystanders interfered and separated the men; but, according to one of the only two eyewitnesses examined, Carter secured a "scantling" and renewed the fight, during which Wells took the "scantling" from Carter, and the men were again separated, whereupon Wells announced to Carter that he (Wells) had enough, to which Carter replied he was not through, and started towards his bedroom "35 or 40 yards" away from the place where the interview began and the fight started. Bystanders then told Wells that he had better leave, and Wells went off from the place where the fight occurred in a direction opposite to that Carter had taken, as will be now stated, remarking, according to one of the two witnesses, for them not to let Carter come. Carter went directly to his bedroom, the entrance to which faced in a direction away from the place where the fight occurred. Carter came promptly out of his bedroom and back towards the place where the fight occurred with a pistol in his hand. When about 6 or 8 feet from his sleeping place Carter's brother stopped him and undertook to calm and dissuade him, a remonstrance that had no apparent effect upon Carter's purpose. Other men stopped Carter a few steps further on towards the place where the fight occurred, but their efforts to dissuade Carter were likewise unavailing. In the meantime, Wells had gone on up the road, being about 75 yards away when the bystanders stopped Carter the second time. Carter followed Wells, weapon in hand. When Carter reached a point about 60 or 65 yards from the place of the fight he shot one time, and in about a half minute he shot a second time. At the time the second shot was fired Wells was "something like 125 yards" from the point where the fight took place. Carter returned to his "camp." Later Wells' lifeless body was found. He was shot through the heart from the back. The trial court gave the general affirmative charge for the defendant, on the theory, as we understand it, that Carter's act in killing Wells was not an act for which the defendant, as Carter's employer, was responsible, it being a personal act of Carter's outside of the scope and line of Carter's duties or employment.

The law governing, applicable to cases of the class to which this one belongs, is thoroughly settled in this jurisdiction. In Gil-

liam v. S. & N. A. R. Co., 70 Ala. 270, it was declared:

"If the agent, while acting within the range of the authority of his employment, do an act injurious to another, either through negligence, wantonness, or intention, then, for such abuse of the authority conferred upon him, or implied in his employment, the master or employer is responsible in damages to the person thus injured. But, if the agent go beyond the range of his employment or duties, and of his own will do an unlawful act injurious to another, the agent is liable, but the master or employer is not."

This doctrine of the Gilliam Case has been repeatedly followed and applied. In elucidation of the vitally important phrase, "while acting within the range of the authority of his employment," this court said in Goodloe v. M. & C. R. R. Co., 107 Ala. 233, 240, 18 South. 166, 167, 29 L. R. A. 729, 54 Am. St. Rep. 67:

"It is said, on the point under consideration, that the rule of the responsibility of the master for the acts of his servant 'does not apply simply from the circumstance that at the time when the injury is inflicted the person inflicting it was in the employment of another; but that, in order to make the master liable, the act inflicting the injury must have been done in pursuance of an express or implied authority to do it. That is, it must be an act which is fairly incident to the employment; in other words, an act which the master has set in motion.' * * * 'And generally, where the injury results from the execution of the employment, the master is liable.'"

In Palos Coal Co. v. Benson, 145 Ala. 664, 39 South. 727, it was also soundly, here pertinently, pronounced:

"The act must be, not only 'within the scope of his employment, but also' committed in the accomplishment of objects within the line of his duties, or in or about the business or duties assigned to him by his employer"—citing apt authorities made by this court.

This announcement of doctrine was again approved in Republic Iron Co. v. Self, 192 Ala. 403, 406, 68 South. 328, L. R. A. 1915F, 516; Hardeman v. Williams, 150 Ala. 415, 419, 43 South. 726, 10 L. R. A. (N. S.) 653; Ala. Fuel Co. v. Rice, 187 Ala. 458, 462, 65 South. 402; Addington v. Amer. Casting Co., 186 Ala. 92, 95, 64 South. 614. Our cases of Case v. Hulsebush, 122 Ala. 212, 26 South. 155; Gassenheimer v. Western Ry. Co., 175 Ala. 319, 57 South. 718, 40 L. R. A. (N. S.) 995; Jebeles, etc., Co. v. Booze, 181 Ala. 456, 62 South. 12, and the decision of the court of Appeals in Avondale Mills v. Bryant, 10 Ala. App. 507, 63 South. 932, are in accord with the decisions before mentioned in their announcement and in the application of the principles reproduced above. The application of these established principles to the circumstances shown by this record justified the trial court in giving the general affirmative charge for the defendant. It is manifest, we think, that the act declared on—the wrongful killing of Wells by Carter—was not, to practically appropriate the comprehensive expression of the court in the Goodloe Case (supra), in the line of, or incidental to, Carter's employment and duties, was not done in pursuance or in abuse of an express or implied authority from the defendant, but, to the contrary, was a personal act of Carter in the doing of which he stepped aside from the purposes of the agency committed to him, and thereby inflicted upon Wells an independent wrong. If Carter had wrongfully killed Wells in the fight which immediately resulted from the original dispute, in which Carter made an opprobrious reply to Wells' innocent declaration that he had, he believed, performed his engagement, a different case from that now presented would have been presented for decision. The original dispute and fight had ended. Wells had gone from its scene. All of it that survived was a murderous resentment entertained by Carter. Wells himself had announced its conclusion as far as he was concerned and had departed. Carter declared, he was not through with it; left the scene to get his pistol, and, traveling 35 or 40 yards, got it, and returning on the same route, took up and pursued Wells 100 yards or more from the scene of the fight, and shot him. No possible duty to Carter's employer gave even colorable right to Carter to thus pursue and shoot Wells. His act in so doing was dictated, solely, by Carter's purely personal resentment. No other theory could possibly consist with the facts and circumstances disclosed by the record. In Jebeles, etc., Co. v. Booze, 181 Ala. at page 460, 62 South. at page 14, it was said:

"There was nothing in the testimony to indicate that the assault grew out of anything other than the differences indicated above and some temper evolved from the fact and manner of plaintiff's dismissal from the defendant's service."

It is insisted for appellant that the expression with reference to temper in the quotation just made should serve as authority for a conclusion that Carter's passion, engendered by the fight with Wells, afforded a connection between that difficulty and the later pursuit and shooting of Wells by Carter in such sort as to constitute the fight, the pursuit and the shooting elements of a single transaction. The court, in the expression mentioned, entertained no purpose to declare, even as a finding of fact, to the effect appellant would have attributed thereto. The temper referred to in the expression was pointedly attributed, for its cause or inspiration, to the "fact and manner of plaintiff's dismissal"; both matters within the scope of the duties and of the authority committed by the defendant to Colias, the defendant's agent. Much the same character of insistence is predicated of features of the opinion in Gassenheimer v. Western Ry. Co., 175 Ala. 319, 322, 57 South. 718, 40 L. R. A. (N. S.) 998. There the plaintiff went to Mabson's superior to complain and did complain of the delay in delivering the freight to plaintiff's drayman, and upon plaintiff's return, with other agents of the railway company who entered upon the effort

to fix the responsibility or the cause of the delay, to where Mabson was, Mabson, without provocation or warning, committed on the plaintiff the assault for which he sued. The appeal was from an order overruling a motion for new trial. The trial court there entertained the opinion that the act of Mabson was outside the scope of employment and duties. This court found error in that conclusion; held the issue was for the jury's solution; and on the facts pronounced all that occurred one transaction. The reason is clear from the opinion, viz. that the whole circumstances involved the delivery of plaintiff's freight; that plaintiff's appeal to Mabson's superiors and his and their return with him were in reference to the matter of the delivery of his freight; and that Mabson's duties included that particular service. Besides, the facts and circumstances involved in these cases, as well as in Case v. Hulsebush, 122 Ala. 212, 26 South. 155, and in Avondale Mills v. Bryant, 10 Ala. App. 507, 63 South. 932, readily distinguish them from the case under consideration. In all of them the assaults bore an immediate relation to elements of the duty and authority committed to the assaulting agent of the defending principal. The facts fully recited in Case v. Hulsebush disclose that the assault in question was the direct, immediate result of a duty the discharge of which was committed to young Case, and was but the continuation, though interrupted, of the subject-matter of the earlier controversy between plaintiff and young Case. The court said: "It all grew out of the 50 cent tax fee. * * *" If young Case had, after the first angry discussion with plaintiff, armed himself, and followed plaintiff away and shot him, the circumstances would have then borne a real resemblance to those here under review. Not being disposed to reconsider the rules, for this class of cases, established in this jurisdiction, we have not thought it desirable or necessary to comment on pertinent expressions from other courts or text-writers.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.