In effect, we are asked by Jane Doe ("the plaintiff") to require the defendants,[1] *Page 1210 
through the State Employees' Liability Trust Fund (the "Fund"), established pursuant to Alabama Code 1975, § 36-1-6.1 (Act 83-521, Alabama Legislature 1983) ("the Act"), to pay a judgment that the plaintiff had obtained against Dr. John Hall, a state psychologist, for sexually assaulting the plaintiff. The plaintiff had acquired her judgment against Dr. Hall in an earlier federal action.
In the federal action, the plaintiff alleged that while she was involuntarily committed at North Alabama Regional Hospital, she was sexually assaulted by Dr. Hall, a psychologist assigned to the hospital. A jury awarded the plaintiff $1.5 million in compensatory damages and $5 million in punitive damages against Dr. Hall. The allegations of the plaintiff's complaint in the federal action were that "Dr. Hall willfully and intentionally engaged in a course of conduct which he knew was in direct violation of his duties and obligations" and that he "recklessly and wantonly disregarded his duties and obligations." When the State of Alabama failed to pay the federal judgment against Dr. Hall out of the Fund, the plaintiff brought this state court action, seeking to prove that Dr. Hall was entitled to protection by the Act, because, the plaintiff alleged, his sexual assaults on her were "committed while in the performance of [his] official duties in the line and scope of [his] employment," and seeking to compel payment of the judgment from the Fund. The trial court entered summary judgment for the defendants. The plaintiff appealed.[2]
The express purpose of the Act is, in pertinent part, as follows (as quoted from the title of the Act):
 "To provide for the protection of state employees . . . for certain wrongful acts . . . committed while in the performance of their duties in the line and scope of their employment. . . ."
Pursuant to the Act, certain "terms and conditions" were adopted, which the plaintiff contends should be interpreted to expand the protection authorized by the Act so as to cover all acts by state employees, regardless of whether such acts were done "while in the performance of their official duties in the line and scope of their employment." The trial court rejected such reasoning, holding as follows:
 "The Court has examined [the Act] as a whole and concludes that the legislature could have only rationally intended that the State provide state employees coverage for their negligent or wrongful acts committed while in the performance of their official duties in the line and scope of their employment. See, John Deere Co. v. Gamble, 523 So.2d 95 (Ala. 1988) (in determining legislative intent the Court should consider the act as a whole and will presume that the legislature intended a rational result). The Court does not believe that the State funds could be legally spent for liability insurance or errors and omissions insurance to cover the acts of state employees which were not committed in the performance of their official duties in the line and scope of employment.
 "The Court further finds that the requirements of [the Act] should be read into the comprehensive general liability insurance policy and that the coverage provided in Part 1B can only extend to occupational errors or omissions arising out of the performance of or failure to perform official duties in the employees' capacity and were either done or omitted in the line or scope of their employment. Any other interpretation results in the conclusion that the Finance Director exceeded the authority granted him by [the Act] in providing self insurance."
We agree — the Act controls the outer limits of the protection afforded. Thus, in order to resolve the dispositive issue, we must interpret the language in the Act, "while in *Page 1211 
the performance of their official duties in the line and scope of their employment."
There have been numerous Alabama cases interpreting the "line and scope language." These cases are relevant to interpret the phrase "line and scope" in the Act and, thus, the protection afforded by the Act.
 "'. . . The test is the service in which the employee is engaged. The rule which has been approved for determining whether certain conduct of an employee is within the line and scope of his employment is substantially that if an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment.'
 "The conduct of the employee . . . must not be
impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment."
Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 401,232 So.2d 638, 642 (1970) (citations omitted) (emphasis added); see, also, Plaisance v. Yelder, 408 So.2d 136 (Ala.Civ.App. 1981) (in which the Court of Civil Appeals noted that the test is whether "it can be shown that the servant acted from wholly personal motives having no relation to the business of the master").
In Prosser v. Glass, 481 So.2d 365 (Ala. 1985), the "furtherance of the employment" aspect of the test was discussed. In Prosser, the employee, a mechanic employed to assist in developing a fuel-saving device, was assisting in repairing a truck for a neighboring business, but at his employer's place of business. This Court, finding that the employee was not acting in the line and scope of employment, found that his repair of the truck "would not reasonablyfurther the purpose of developing the fuel-saving device, which was the business at hand. Therefore, (the employee's) deviation . . . was . . . outside the scope of employment." (Emphasis added.)
In Joyner v. AAA Cooper Transp., 477 So.2d 364 (Ala. 1985), the plaintiffs sued an employer, alleging that its terminal manager had committed assault and battery by "forcing or attempting to force them to engage in homosexual acts with him." Citing Solmica of the Gulf Coast, Inc., supra, this Court noted that the manager's acts were not in the line and scope of his employment, and were not "in furtherance of AAA's business." In Great Atlantic Pacific Tea Co. v. Lantrip,26 Ala. App. 79, 153 So. 296 (1934), the Alabama Court of Appeals held that sexual advances made by a store clerk while waiting on the plaintiff, including forcibly putting the plaintiff's hand on a certain part of his body, was "entirely personal . . . and was wholly aside from the master's business." Thus, there was no liability under respondeat superior.
There are numerous other cases[3] holding that sexual misconduct by an employee is purely personal and outside the line and scope of his employment. In Andrews v. United States,732 F.2d 366 (4th Cir. 1984), Andrews sued the Government under the *Page 1212 
Federal Tort Claims Act, alleging that Gee, a military physician's assistant, had seduced Ms. Andrews and that his supervisor, Dr. Frost, had been negligent in supervising Gee. For the plaintiff to recover under the Act, Gee and Frost must have been acting within the line and scope of their employment. The court noted that "Gee was furthering his self-interest, not his employer's business, at the time he seduced his patient." However, Andrews was allowed to proceed with the suit, because Dr. Frost was alleged to have negligently supervised Gee and the supervision of Gee was within the line and scope of Frost's employment.
The facts in Andrews were very similar to the facts in this case. Like the plaintiff in Andrews, this plaintiff sued the principal actor, Dr. Hall, and his supervisor, in the federal action. In that case, the claim against the supervisor was settled and payment was made by the Fund, since, as noted inAndrews, negligent supervision is within the line and scope of a supervisor's official duties. In her suit against Dr. Hall, the plaintiff established that she had been sexually assaulted by Dr. Hall, whose misconduct she alleged in her federal complaint was "wholly personal" and not done "in furtherance of his employment," but solely "to gratify his own feelings." The sexual assault was not committed in the line and scope of his employment by the State of Alabama.
We have carefully reviewed the cases cited by the plaintiff as authority for the proposition that "sexual acts can be in the line and scope of one's employment."[4] We are not persuaded by the holdings in these cases. Furthermore, of these cases, only Simmons v. United States, 805 F.2d 1363 (9th Cir. 1986), is relevant to the facts of this case. Simmons was a patient of Kammers, *Page 1213 
a counselor with the Indian Health Service. She saw Kammers for counseling from 1973 until August 1980 and then maintained the counseling relationship through telephone contacts until July 1981. In October 1978, after five years of counseling, Simmons and Kammers entered into a romantic relationship and in January 1979 had sexual intercourse. After the relationship ended, Simmons sued the United States under the Federal Tort Claims Act. Under that Act, in order for Simmons to recover, she had to prove that Kammers was acting within the scope of his employment. The Court of Appeals for the Ninth Circuit concluded that Kammers was acting within the scope of his employment because he mishandled the "transference phenomenon," a condition that develops in counselling gradually over a period of time and that results from the patient's placing trust in the counselor.
In the instant case, the plaintiff, in addition to making the contention made in her federal court complaint — that "[Dr.] Hall willfully and intentionally engaged in a course of conduct which he knew was in direct violation of his duties and obligations" and "recklessly and wantonly disregarded his duties and obligations" — makes the same contention that was made by the plaintiff in Simmons — that abuse of the transference phenomenon is within the line and scope of a counselor's employment. That is, she contends that sex between patient and counselor no longer automatically prevents the application of respondeat superior, because, she argues, abuse of the transference phenomenon is not "purely personal," but constitutes negligent counseling. However, the very case upon which she seeks to rely rebuts her argument.
In Simmons, the Government relied upon Andrews v. UnitedStates, supra. In Andrews, the physician's assistant suggested a sexual involvement to a patient on her second visit to the clinic and during her first counseling session with him. As egregious as his conduct was, it did not amount to an abuse of a trusting dependency relationship such as that which had evolved during Simmons's five years of successful therapy with Kammers. As the Court of Appeals noted in Simmons, it is not medically possible for the transference phenomenon to develop in a short period of time. There must be time for the patient to come to trust the counselor and to "transfer" to the counselor feelings of trust that the patient has previously had for someone else.
In the instant case, it is undisputed that Dr. Hall suggested sexual intercourse during his first meeting with the plaintiff and that the intercourse occurred that same afternoon. Furthermore, the plaintiff's sworn testimony in the federal court action shows that that intercourse was not consented to on her part as a result of any trust she placed in Dr. Hall. Rather, in the federal action, the plaintiff characterized her sexual relations with Dr. Hall as an assault by him for his own gratification. Thus, the plaintiff cannot seek shelter under the transference phenomenon "umbrella." The further undisputed evidence reveals that Dr. Hall's actions were against all rules of his profession and were without any benefit to his employer, the State Department of Mental Health and Mental Retardation. Applying established principles of law, we must conclude that Dr. Hall's sexual intercourse with the plaintiff was not for the benefit of his employer and was not "committed . . . while in the performance of [his] official duties in the line and scope of [his] employment." Ala. Code 1975, § 36-1-6.1(a). Therefore, pursuant to the provisions of the Act, the Fund cannot (and should not) provide "protection" for Dr. Hall from the consequences of his sexual assault on the plaintiff.
In opposition to the defendants' cross-motion for summary judgment, the plaintiff filed excerpts from the transcript of her testimony in federal court. The trial court informed the plaintiff that her trial testimony "clearly establishes that the sexual intercourse did not take place under a guise of treatment or therapy but resulted from Hall's threats to definitely [sic] institutionalize [the plaintiff] if she did not submit to his sexual advances." The plaintiff then sought the trial court's permission to *Page 1214 
file an affidavit. After the plaintiff filed her affidavit, the defendants moved to strike it on the basis that it contradicted her earlier testimony regarding the same matters.
 " 'When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.' "
Robinson v. Hank Roberts, Inc., 514 So.2d 958, 961 (Ala. 1987), quoting Van T. Junkins Associates, Inc. v. U.S. Industries,Inc., 736 F.2d 656, 657 (11th Cir. 1984). See, also, Couch v.Woody Anderson Ford, Inc., 558 So.2d 888 (Ala. 1989); Enoch v.Firestone Tire Rubber Co., 534 So.2d 266 (Ala. 1988); andLady Corrine Trawlers, Inc. v. Zurich Insurance Co.,507 So.2d 915 (Ala. 1987).
In ruling on the defendants' motion to strike, the trial court observed that the matters stated in the plaintiff's affidavit were "clearly relevant" to the merits of her previous trial. Subsequently, in its order, the court discussed in great detail how the plaintiff's affidavit contradicted her trial testimony. Specifically, the court found as follows:
 "[T]he matters stated in [the plaintiff's] affidavit differ significantly in tone and content from her trial testimony. . . .
". . . .
 "Her affidavit sequentially follows her trial testimony. . . . A comparison of her affidavit and trial testimony shows [clearly] an inconsistency between the affidavit and her testimony which leads the Court to the conclusion that either she did not give complete answers to counsel's questions at trial or material aspects of her affidavit are false.
 "The Court does not find that her affidavit merely clarifies ambiguous questions by her counsel at trial. . . . Counsel's question called for her to testify to the matters stated in her affidavit; however, she did not relate to the jury the matter she now tends to put before the Court to create an issue of fact. A comparison of her affidavit and her trial testimony clearly shows that she failed, in response to straightforward questions, to testify to the matter set out in her affidavit about what occurred in the sessions in Dr. Hall's office. Not only is the affidavit clearly and inherently inconsistent with her trial testimony, it contradicts on its face . . . her trial testimony."
(Emphasis added.)
The trial court, noting that the plaintiff's explanation for the inconsistencies between her affidavit and her earlier testimony was inadequate, held that "[the plaintiff's] affidavit cannot be relied upon to create an issue of fact." The trial court further noted that the clear and unambiguous questions asked of the plaintiff at trial called for responses that she did not then give, but which she now gives in her affidavit. The trial court also noted that the plaintiff's responses at trial were clear and unambiguous. Therefore, the trial court held that it would not consider the plaintiff's affidavit in opposition to the defendants' cross-motions for summary judgment but that it would consider her earlier trial testimony. We agree with the trial court that we cannot permit the plaintiff to obtain a jury award against Dr. Hall based upon her testimony of a "purely unadulterated rape" and then in a later action recover that judgment from the Fund by testifying to her consensual submission due to the particular nature of a psychologist/patient relationship.
Having thoroughly reviewed the record, the applicable law, the trial court's order, and the parties' briefs, we are persuaded that the trial court did not err in refusing to consider the plaintiff's affidavit in opposition to the defendants' cross-motion for summary judgment.
Based on the foregoing, we hold that the trial court properly granted the defendants' motion for summary judgment. The plaintiff has raised numerous issues, some of which were not sufficiently argued in her brief for us to consider them. The others have been consolidated in our discussion. *Page 1215 
89-604 AFFIRMED.
89-703 AFFIRMED.
MADDOX, JONES, ALMON and ADAMS, JJ., concur.
STEAGALL, J., recused.
[1] The defendants named in their official capacities as members of the Governing Board of the Liability Fund, also known as the General Liability Trust Fund of the State of Alabama, were George R. Swift, finance director of the State of Alabama; Don Siegelman, attorney general of the State of Alabama; and John Greene, insurance commissioner for the State of Alabama. The defendants named in their official capacities as members of the Coverage Committee of the aforementioned fund were Robert Childree, state comptroller; and George Wallace, Jr., state treasurer. Also named as a defendant was John Hall, a psychologist employed as the Chief of Psychology Services at North Alabama Regional Hospital (a state mental institution).
[2] The defendants filed a cross-appeal contending that the trial court's determination on the limits of liability was erroneous. However, because of our resolution of this case, we pretermit any discussion of the cross-appeal.
[3] In Hoover v. University of Chicago Hospitals, 51 Ill. App.3d 263, 9 Ill.Dec. 414, 366 N.E.2d 925 (1977), the plaintiff was a patient in the hospital when the employee-doctor told her that if she did not get sexual relief she would need open heart surgery. Subsequently, sexual relations occurred; she later sued the doctor and the hospital. The Court noted that the employer is not liable "when the act is committed solely for the benefit of the employee." The Court held that the "sexual assault cannot be interpreted as an act in furtherance of the hospital's business. This . . . act of the doctor was committed solely for the benefit of the doctor. . . ."
In Doe v. United States, 769 F.2d 174 (4th Cir. 1985), brought under the Federal Tort Claims Act, the plaintiff claimed that an Air Force officer who was the plaintiff's social worker treating her for "blackouts" subjected her to "deviant sexual conduct." In upholding the dismissal of the claim, the Court held that the officer "clearly was acting for his personal gratification rather than within the scope of his employment."
Also, holding similarly in regard to an employee's sexual acts are: Taylor v. Doctors Hosp. (West), 21 Ohio App.3d 154,486 N.E.2d 1249 (1985); Noto v. St. Vincent's Hosp. and MedicalCenter, 142 Misc.2d 292, 537 N.Y.S.2d 446 (Sup.Ct. 1988); BigBrother/Big Sister v. Terrell, 183 Ga. App. 496, 359 S.E.2d 241
(1987).
[4] In Cotton v. Kambly, 101 Mich. App. 537, 300 N.W.2d 627 (1980), the plaintiff claimed that she suffered mental and emotional damage when her psychiatrist induced her to engage in sexual intercourse during the course of psychiatric therapy. In reversing a summary judgment in favor of the psychiatrist and the University Center, the court did not address liability on the basis of respondeat superior. Rather, the court, holding that "the essence of the [plaintiff's] claim was the [psychiatrist's] departure from proper standards of medical practice," addressed the issue of medical malpractice and the effect that a statute abolishing the cause of action for common law seduction had on this type of malpractice.
St. Paul Fire Marine Ins. Co. v. Asbury, 149 Ariz. 565,720 P.2d 540 (App. 1986), involved plaintiffs who claimed that their gynecologist improperly and intentionally manipulated their clitorises while performing routine gynecological examinations. The trial court held that this conduct was committed in the course of and as an inseparable part of the professional services rendered and was covered by St. Paul's policy providing coverage for conduct committed while "providing or withholding of professional services." In affirming the lower court, the Court of Appeals found that the tortious sexual abuse of the plaintiffs was intertwined and inseparable from the services performed — in essence, that the doctors' departure from standard practice during the course of the treatment, the mishandling of the plaintiffs, fell within the language of the policy so as to afford protection.
In Lyon v. Carey, 533 F.2d 649 (D.C. Cir. 1976), the plaintiff sued Pep Line Trucking Company, Inc., under a theory ofrespondeat superior. Carey was employed by the trucking company to deliver a mattress to the plaintiff. Carey insisted that the plaintiff pay by cash. The plaintiff testified that Carey told her that if she did not have cash, "he was going to take it on my ass, and he told me that he was no delivery man, he was a rapist . . . and then he threw me on the bed and he had a knife to my throat . . . and then he raped me." Holding that the facts did support a case of liability under the doctrine ofrespondeat superior, the Court of Appeals, in reinstating a jury verdict against the trucking company, stated that if the assault was not motivated or triggered or occasioned by anything in the employment activity but was a result of only promiscuity and lust, there should be no liability but that that question, in the instant case, was for the jury to decide.
In Doe v. Ft. Lauderdale Medical Center Management, Inc.,522 So.2d 80 (Fla.Dist.Ct.App. 1988), the medical center was granted a summary judgment in an action in which a plaintiff sought to prove that the medical center's manager committed a sexual battery on her when she was interviewed at the medical center for a job. The manager performed a physical examination, although he was not a medical doctor, as he pretended to be. The Florida District Court of Appeals reversed the summary judgment in favor of the medical center on a complaint that asserted liability under the theories of respondeat superior
based on apparent authority, negligent supervision, and breach of an implied contract, without discussing the basis for its reversing that judgment.
Simmons v. United States, 805 F.2d 1363 (9th Cir. 1986) (discussed in the body of this opinion).