Trisha B. PERRY, as mother and next friend of Latrecia A. Perry, a minor, and Trisha B. Perry, individually, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 96–0132–MJ–S.

United States District Court, S.D. Alabama, Southern Division.

June 21, 1996.

Eugene A. Seidel, Mobile, AL, for Defendant.

Gregory B. Breedlove, Mobile, AL, for Plaintiffs.

## ORDER

STEELE, United States Magistrate Judge.

This cause is before this Court on Defendant's Motion to Dismiss (Doc. 3) and supporting documents, and Plaintiff's Motion to Remand, Objection to Notice of Substitution and Opposition to Motion to Dismiss (Doc. 6) and supporting documents. These motions came before the Court for oral argument on April 12, 1996. Participating at the hearing were attorneys Gregory B. Breedlove and David G. Wirtes, Jr., for the Plaintiff, and Eugene A. Seidel, Assistant United States Attorney, for the Defendant. Upon consideration of all matters presented, and for the reasons set forth herein, Defendant's Motion to Dismiss is GRANTED and Plaintiff's Motion to Remand is DENIED.

### Procedural History and Background

Plaintiff, Trisha B. Perry, originally filed this medical malpractice action against Kenneth P. Moore, M.D., an active duty officer in the United States Air Force, in the Circuit Court of Mobile County, Alabama. Plaintiff's complaint sought damages from Captain Kenneth Moore (hereinafter "Captain Moore") for alleged negligent acts or omissions committed upon Latrecia Perry while Miss Perry was under Captain Moore's medical care and treatment at the University of South Alabama Medical Center (hereinafter "USAMC") on December 23, 1993. Captain Moore was served with an alias summons and the complaint on or about December 18, 1995, and, thereafter, filed an answer denying the allegations of Plaintiff's complaint on January 2, 1996. On February 13, 1996, this case was removed from the Mobile County Circuit Court to the United States District Court for the Southern District of Alabama by the United States of America pursuant to 28 U.S.C. § 2679(d)(2). Along with the Notice of Removal filed on February 13, 1996, the Government filed a Notice of Substitution and Amendment of Caption substituting the United States of America as the sole defendant for the individual defendant, Captain Moore, pursuant to the Federal Employee Liability Reform and Tort Compensation Act of 1988, §§ 5 and 6, Pub.L. No. 100–694, 102 Stat. 4564 (1988), codified at 28 U.S.C. § 2679(d) (hereinafter "the Liability Reform Act"), and a Motion to Dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In response, Plaintiff filed a Motion to Remand, Objection to Notice of Substitution and Opposition to Motion to Dismiss on March 7, 1996. On April 4, 1996, Defendant filed the Government's Memorandum of Law in Opposition to Plaintiff's Motion to Remand.

### Findings of Fact

On or about December 17, 1993, Latrecia Perry, then two years old, was admitted to the University of South Alabama Medical Center following a burn injury she sustained in her home earlier that day (First Amended Complaint, p. 3). Latrecia Perry was under the medical care and treatment of Captain Moore, and other physicians and medical personnel during her admission to USAMC (Motion to Remand, Exhibit A, pp. 2–5). Latrecia Perry apparently went into cardiac arrest on the evening of December 23, 1993, while at USAMC (First Amended Complaint, p. 4, Plaintiff's Motion to Remand, p. 7). Captain Moore was present on the evening of December 23, and performed chest compressions on Latrecia Perry (Motion to Remand, Exhibit A, p. 4). Plaintiff Tricia B. Perry, mother and next friend of Latrecia Perry, a minor, alleges that Latrecia Perry suffered damages as a result of the alleged medical malpractice of Captain Moore and others during Latrecia Perry's treatment at USAMC (First Amended Complaint, p. 5–6).

Specifically, Plaintiff alleges that the acts or omissions of Captain Moore while at USAMC fell below the national standard of care with regard to the insertion, observation and monitoring of a central venous line catheter in the treatment of Latrecia Perry on December 23, 1993 (First Amended Complaint, p. 4, Motion to Dismiss, p. 2).

At the time of his alleged malpractice, Captain Moore was an active duty officer and general surgical resident in the United States Air Force stationed at Keesler Air Force Base, Mississippi (Declaration of Major Robert W. Dodson, p. 1). Captain Moore was on a surgical rotation at USAMC pursuant to temporary duty orders issued by his superiors effective November 27, 1993 through December 31, 1993, and an agreement (hereinafter "the agreement") between Keesler Medical Center and the University of South Alabama (Declaration of Major Robert W. Dodson, p. 1). Air Force surgical residents at Keesler Medical Center, including Captain Moore, were trained in part through training affiliation agreements between Keesler Medical Center and civilian institutions, such as the University of South Alabama (hereinafter "the University") (Id.). The agreement allowed Air Force residents to rotate through USAMC's surgery department to gain additional instruction, training and experience unavailable at Keesler Medical Center (Id.). The agreement states that the purpose of the program was to give Air Force residents experience in the management of burn patients on a one month rotation basis (Motion to Dismiss, Exhibit B, p. 1).

*Assertions of the Parties*

In its Motion to Dismiss, Defendant asserts that this action is due to be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, based on Plaintiff's failure to file an administrative claim as required by the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2675(a). Defendant contends that since Plaintiff failed to file an administrative claim in accordance with the FTCA and failed to exhaust her administrative remedies, this Court is without jurisdiction over the subject matter of this action.

Specifically, Defendant argues that at the time of Captain Moore's alleged negligence, he was a federal employee acting within the scope of his federal employment as an United States Air Force officer. Defendant asserts that Captain Moore was subject to the command of his superiors at Keesler Medical Center, and that he was under the immediate supervision of both the University program director and the Keesler program director. Defendant contends that upon the United States Attorney's certification that Captain Moore was acting within the scope of his federal employment at the time of the alleged incident pursuant to 28 U.S.C. § 2679(d)(2), this action was properly removed from state court and the United States was properly substituted as the sole defendant in accordance with 28 U.S.C. §§ 2679(d)(1) & (2). As such, Defendant contends that the Liability Reform Act, 28 U.S.C. § 2679(b)(1), makes the remedy against the United States provided for in the FTCA Plaintiff's exclusive remedy for any damages to Latrecia Perry allegedly caused by Captain Moore, a federal employee acting within the scope of his federal employment. In support of this contention, Defendant relies on *United States v. Smith,* 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).

In response to Defendant's Motion to Dismiss, Plaintiff asserts that this action was improperly removed from state court, that the United States was improperly substituted as the sole defendant in this action, and that this matter is due to remanded to the Circuit Court of Mobile County, Alabama. *See* Plaintiff's Motion to Remand, Objection to Notice of Substitution and Opposition to Motion to Dismiss. Specifically, Plaintiff contends that there is insufficient evidence for an assertion of federal jurisdiction in this case. In support of this contention, Plaintiff argues that Captain Moore was under the immediate supervision and control of the University only. Plaintiff further argues that Captain Moore was not acting within the scope of his official duties as a military physician. Rather, Plaintiff contends that Captain Moore was acting as any other private physician in training at the University, and that the United States Attorney's certification on

this point is insufficient and subject to judicial review. Relying upon *Afonso v. City of Boston*, 587 F.Supp. 1342 (D.Mass 1984) and *Brillant v. Royal*, 582 So.2d 512 (Ala.1991), Plaintiff asserts that Captain Moore was either a borrowed servant or an independent contractor at the time of the incident, and that neither the FTCA, the Liability Reform Act nor The Gonzales Act, 10 U.S.C. § 1089, are applicable in this case. Plaintiff also contends that the legislative histories of the FTCA and the Gonzales Act as set forth in *Newman v. Soballe*, 871 F.2d 969 (11th Cir. 1989), support a theory of personal liability.

Plaintiff also contends that the removal was untimely according to 28 U.S.C. §§ 1442(a)(1) and 1446(b). Additionally, Plaintiff argues that Captain Moore waived his official immunity defense when he filed an answer in state court and failed to assert the affirmative defense of lack of jurisdiction over the person in accordance with Rule 12(b)(2) of the Alabama Rules of Civil Procedure. Consequently, Plaintiff contends that Captain Moore waived his right to immunity under the FTCA, and, therefore, this cause is due to be remanded to state court on procedural grounds.

In response to Plaintiff's Motion to Remand, Defendant argues that for purposes of removal the United States Attorney's certification that Captain Moore was acting within the scope of his federal employment is binding on this Court. Defendant, however, concedes that the certification that Captain Moore was acting within the scope of his federal employment for purposes of substitution and the FTCA is subject to judicial review, and argues that the determination is governed by the law of the state where the incident occurred, the State of Alabama. Defendant contends that under Alabama law Captain Moore was acting within the scope of his federal employment as an Air Force officer at the time of his alleged negligence. In support of this contention, Defendant relies primarily on *Doe v. Swift*, 570 So.2d 1209 (Ala.1990), and *Jeffrey Manufacturing Company v. Hannah*, 268 Ala. 262, 105 So.2d 672 (1958). Finally, Defendant argues that Plaintiff's authority in support of her motion

is inapposite or has been superseded by contrary authority.

*Conclusions of Law*

■ The FTCA, as codified 28 U.S.C. § 1346 *et seq.*, permits a person that has been injured by a Government employee while acting within the scope of his employment to seek tort damages against the Government. *United States v. Smith*, 499 U.S. at 162, 111 S.Ct. at 1183. In 1988, Congress enacted the Liability Reform Act as an amendment to the FTCA. *Id.* The Liability Reform Act limits the relief available to persons who are injured by Government employees acting within the scope of their employment, and provides that for those persons so injured "[t]he remedy against the United States" under the FTCA "is exclusive for any other civil action or proceeding for money damages." *Id.* (*quoting* 28 U.S.C. § 2679(b)(1)).

■ Congress amended the FTCA as a response to the Supreme Court's ruling in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). *Smith*, 499 U.S. at 163, 111 S.Ct. at 1183. In *Westfall*, the Supreme Court found that the judicially created doctrine of official immunity does not provide absolute immunity to Government employees for torts committed in the scope of their employment. *Westfall*, 484 U.S. at 297–98, 108 S.Ct. at 584. The Supreme Court held that "absolute immunity from state tort law actions should be available only when the conduct of federal officials is within the scope of their official duties and the conduct is discretionary in nature." 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988).

■ The Liability Reform Act established the absolute immunity for Government employees that the Supreme Court declined to recognize in *Westfall*, *Smith*, 499 U.S. at 163, 111 S.Ct. at 1183, thus, extending to federal employees absolute tort immunity for acts committed within the course and scope of their employment, whether discretionary or operational. *Hill v. TVA*, 842 F.Supp. 1413, 1419 (N.D.Ala.1993) (*citing Springer v. Bryant*, 897 F.2d 1085, 1087 n. 2 (11th Cir. 1990)). The Liability Reform Act "confers such immunity by making an FTCA action

against the Government the exclusive remedy for torts committed by Government employees in the scope of their employment." *Smith,* 499 U.S. at 163, 111 S.Ct. at 1184. In fact, the Supreme Court held in *Smith* that the Liability Reform Act immunizes government employees acting within the scope of their employment even when an FTCA exception would preclude liability and recovery against the United States Government. *Id.* at 165, 111 S.Ct. at 1184–85. In accordance with the Supreme Court's ruling in *Smith,* if a federal employee is found to have been acting within the scope of his or her employment at the time of the alleged incident, the FTCA is the injured person's exclusive mode of recovery against the federal employee. Therefore, in this case, if Captain Moore is found to have been acting within the scope of his employment as a United States Air Force officer at the time of the alleged injury to Latrecia Perry, the only mode of recovery available to Plaintiff is through the administrative procedures provided for in the FTCA.

As set forth above, the Liability Reform Act shields federal employees from liability for torts committed within the scope of employment. Under the FTCA and the Liability Reform Act, the United States shall be substituted for the employee as the defendant in any tort action initiated against an employee if the employee was acting within the scope of employment. 28 U.S.C. § 2679(d)(1). Such substitution shall be granted upon the certification of the Attorney General[1] that the employee was acting within the scope of employment. 28 U.S.C. § 2679(d) provides in relevant part:

(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident.... any civil action or proceeding commenced upon such claim in a United States district court *shall* be deemed an action against the United States.... and the United States *shall be substituted as the party defendant.*

(2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident.... any civil action or proceeding commenced upon such claim in a State court *shall* be removed.... *at any time before trial....* to the district court of the United States.... [t]his certification of the Attorney General *shall conclusively establish scope of office or employment for removal purposes.*

(emphasis added).

■ The Supreme Court has held that the United States Attorney General's certification that a federal employee is acting within the course and scope of his or her employment at the time of an alleged incident is dispositive for removal purposes under § 2679(d)(2). *Gutierrez de Martinez v. Lamagno,* — U.S. —, —, 115 S.Ct. 2227, 2235, 132 L.Ed.2d 375 (1995); *accord S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538 (11th Cir.1990). Although the language in § 2679(d)(1) is seemingly as mandatory as the language in § 2679(d)(2), the Supreme Court has held that a United States Attorney's certification that a federal employee's actions are within the scope of his or her employment for purposes of substitution under the FTCA is not conclusive and is subject to de novo judicial review by the district courts. *Id.* at —, 115 S.Ct. at 2237; *see also S.J. & W. Ranch,* 913 F.2d at 1542 (statute's legislative history and language of statute itself support finding that United States Attorney General's scope certification under FTCA is subject to judicial review). However, once the federal employee has been certified as acting within the scope of his or her employment, the plaintiff has the burden of proving that the federal employee was not acting within the scope of employment. *S.J. & W. Ranch,* 913 F.2d at 1543.

■ In the case *sub judice,* the United States Attorney certified on February 13, 1996, that Captain Moore was acting within

---

1. The Attorney General delegated this authority by regulation to the United States Attorneys and the Assistant Attorney General for the Civil Division, Department of Justice, who regularly make scope of employment certification determinations. *See* 28 C.F.R. § 15.3 (1992). In the case *sub judice,* the certification was effected by the United States Attorney for the Southern District of Alabama pursuant to the above regulation.

the scope of his employment as an employee of the United States at the time of the conduct alleged in Plaintiff's complaint. *See* Defendant's Motion to Dismiss, Exhibit A. Plaintiff contends that there is no evidentiary basis for an assertion of federal jurisdiction. However, as stated above, the United States Attorney's certification that Captain Moore was acting within the scope of his federal employment at the time the alleged incident occurred is dispositive for purposes of the invocation of federal jurisdiction and removal of the case. As such, the undersigned finds that this action was properly removed from state court to this United States District Court. Plaintiff also challenges the certification and the substitution of the United States as the sole defendant in this case, asserting that Captain Moore was not acting within the scope of his employment as an Air Force officer at the time of his alleged tortious conduct. As such, the burden is on Plaintiff to establish that Captain Moore was not acting within the scope of his federal employment at the time of the alleged incident.

Scope of employment determinations for purposes of the FTCA are governed by the law of the state where the incident occurred. *S.J. & W. Ranch,* 913 F.2d at 1542; *see Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). The alleged incident occurred in the state of Alabama; thus, Alabama law will govern the scope of employment determination in this case. Under Alabama law, scope of employment determinations are guided by the principles of *respondeat superior. Pryor v. Brown & Root USA, Inc.,* 674 So.2d 45, 47 (Ala.) (the liability for the tortious act of the employee is grounded upon the maxim of *respondeat superior*). The maxim of *respondeat superior* means that a master is liable in certain cases for the wrongful acts of his servant. *Black's Law Dictionary* 1179 (5th ed. 1981). However, this is not a master-servant liability case. Rather, it is a case in which the central determination, whether an employee was acting within the scope of his or her employment at the time of the incident, is the same determination that is made when finding whether a master-servant relationship exists. Therefore, the law to be

applied is the same law applied in master-servant liability cases.

Under the doctrine of *respondeat superior,* two conditions must be established in order to find a master-servant relationship: (1) that the status of the employer and employee existed at the time of the negligent act and (2) that the act was done in the scope of the employee's employment. *Newsome v. Mead Corporation,* 674 So.2d 581, 582 (Ala. Civ.App.) (*citing Wells v. Henderson Land & Lumber Co.,* 200 Ala. 262, 76 So. 28 (1917)). Before addressing the scope of employment issue, the undersigned must determine whether Captain Moore was an employee of the United States Air Force at the time of the alleged incident. Captain Moore was an active duty officer with the United States Air Force at the time of the alleged malpractice. *See* Declaration of Major Robert W. Dodson, p. 1. Captain Moore continued to receive full military pay and allowances, and the time Captain Moore spent at USAMC counted toward his total federal service, military retirement eligibility, and service obligations. *Id.* at p. 2. Captain Moore was ordered by his superiors to attend burn management training at USAMC, and he remained subject to the Uniform Code of Military Justice and all other Air Force Regulations during his training. *Id.* at pp. 1–2. Based on the foregoing, the undersigned finds that Captain Moore was an employee of the United States Air Force at the time of the alleged incident. Therefore, an employee-employer relationship did exist between Captain Moore and the United States Government at the time the alleged tortious act occurred.

Having found that Captain Moore was an employee of the United States Government, the Court must now determine whether Captain Moore was acting within the scope of his federal employment when the alleged negligence occurred. There are numerous Alabama cases interpreting the phrase "acting within the line and scope of employment." The Alabama Supreme Court has held that:

'... [t]he test is the service in which the employee is engaged. The rule which has been approved for determining whether certain conduct of an employee is within

the line and scope of his employment is substantially that if an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment.'

[t]he conduct of the employee ... must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment.

*Doe v. Swift,* 570 So.2d 1209, 1211 (Ala.1990) (*quoting Solmica of the Gulf Coast, Inc. v. Braggs,* 285 Ala. 396, 401, 232 So.2d 638, 642 (1970) (citations omitted)). The *Doe* Court discussed the "furtherance of the employment" aspect of the *Solmica* test, and found that acts that were done in reasonable furtherance of the development of the employer's business were done within the line and scope of employment. *Id.*

Where the evidence, either directly or indirectly, tends to show that the wrong committed by the servant while he is undertaking to carry out the duties assigned to him by the master, the servant is acting within the line and scope of employment. *Sibley v. Adams,* 56 Ala.App. 572, 324 So.2d 287, 290 (Ala.1975) (*citing Solmica,* 232 So.2d 638). Moreover, if the evidence tends to establish that the act was incidental to performing the duties assigned to him by the master, the master may be held responsible even though he did not authorize the agent to resort to such means in rendering the services for which he was employed. *Id.* (*citing United States Steel Co. v. Butler,* 260 Ala. 190, 69 So.2d 685 (1953)).

Although scope of employment determinations are governed by the law of the state where the incident occurred, it should be noted that members of the military or naval forces are considered to be acting within the scope of their office or employment when they are "acting in the line of duty." *See* 28 U.S.C. § 2671.

In the case *sub judice,* according to Captain Moore's superior, Major Robert Dodson, Captain Moore was ordered to attend training at USAMC for a period of thirty days for the purpose of obtaining experience in managing burn cases. At all times during his training at USAMC, Captain Moore was an active duty officer with the United States Air Force, and continued to receive full military pay and allowances. The time Captain Moore spent at USAMC counted toward his total federal service, military retirement eligibility, and service obligations. Captain Moore remained subject to the Uniform Code of Military Justice and all other Air Force Regulations during his training. Major Dodson stated that the training agreement with the University allowed United States Air Force surgical residents to gain additional instruction, training and experience to be applied in the care of Air Force patients.

The agreement between the University and the Keesler Medical Center specifically states that Captain Moore would be at USAMC for training in the care of burn patients only, and that Captain Moore would be under the *joint* immediate supervision of the University program director *and* the Keesler program director. Motion to Dismiss, Exhibit B, paragraphs 2 and 4. It also states that the clinical experience gained under the agreement is invaluable to the educational preparation of the Air Force's surgical residents. *Id.* at paragraph 3. While USAMC was allowed to bill for Captain Moore's services, the Air Force paid USAMC no training expenses under the agreement. *Id.* at paragraph 5. The Air Force was responsible under the agreement for any emergency care that Captain Moore might need in the event of injury or illness. *Id.* at paragraph 9h. Most importantly, however, the agreement clearly states that Captain Moore remains an employee of the United States. Specifically, the agreement states:

7. While assigned to the University and performing services pursuant to this agreement, the military residents remain employees of the United States performing duties within the course and scope of their federal employment.

*Id.* at paragraph 7. While this paragraph stating that Captain Moore was acting within the scope of his federal employment is not determinative of the issue, it certainly indi-

cates that both the University and the Air Force understood Captain Moore to be an employee of the United States, not the University of South Alabama.

Citing a 1984 Massachusetts district court case, *Afonso v. City of Boston, supra,* Plaintiff argues that Captain Moores was acting as a borrowed servant at the time of the alleged incident. Plaintiff points out in her brief that *Afonso* is factually similar to the case at hand in that it involved a medical malpractice action against an Air Force physician who was performing services at a city hospital through a residency program sponsored by a university. It should be noted, however, that, in *Afonso,* the Air Force retained no right to control the physician or his actions while at the hospital, and no Air Force personnel were involved in the direction of the university residency program. *Afonso,* 587 F.Supp. at 1347. Additionally, in *Afonso* the Government agreed with the plaintiffs that the physician was a borrowed servant but argued the borrowed servant rule as an affirmative defense to liability. *Id.* at 1344.

In *Afonso,* the court found that it could not take jurisdiction of the case on the bare assertion by the Government that the physician was in the military. *Afonso,* 587 F.Supp. at 1345. The *Afonso* Court concluded that the plaintiffs had a remedy under the FTCA and the Gonzalez Act[2] only if the United States was vicariously liable for the military doctor's acts under state-tort and agency-law principles. *Id.* at 1344–45. The court further found that, under Massachusetts' borrowed servant rule, such liability against the United States was not available and, thus, denied substitution of the United States as the sole defendant and remanded the case back to state court. *Id.* at 1346–47.

In reaching these conclusions, the *Afonso* Court relied heavily on Congress' intent in passing the Gonzalez Act. However, the *Afonso* Court's interpretation of the Gonzalez Act and its reliance on the legislative history of the Gonzalez Act has been abrogated by the United States Supreme Court's ruling in *Smith, supra.* The Supreme Court granted certiorari in *Smith* specifically to resolve a conflict between the circuits over "whether the Liability Reform Act immunizes employees from suit even when an FTCA exception precludes recovery against the Government." *Smith,* 499 U.S. at 165, 111 S.Ct. at 1184–85. As previously discussed, overturning the Ninth Circuit, the Supreme Court found that the FTCA does immunize federal employees acting within the scope of their federal employment from suit even when an FTCA exception might preclude recovery against the Government. *Id.* The Court observed:

> The Gonzalez Act functions solely to protect military medical personnel from malpractice litigation; it does not create rights in favor of malpractice plaintiffs. What respondents describe as their "Gonzalez Act remedy" is in fact a state.... remedy that would not be foreclosed by Gonzalez Act immunity.... the Liability Reform Act does not repeal anything *enacted* by the Gonzalez Act. The Liability Reform Act *adds* to what Congress created in the Gonzalez Act, namely protection from liability for military doctors.

*Id.* at 171, 111 S.Ct. at 1188 (emphasis in original). This holding and reasoning of *Smith* abrogates the legislative history rationale of the *Afonso* Court. According to *Smith,* as long as a federal employee was acting within the scope of his federal employment, the Liability Reform Acts requires substitution of the United States, 28 U.S.C.

**2.** The Gonzalez Act, as codified 10 U.S.C. § 1089, provides in pertinent part:
(a) The remedy against the United States provided by section 1346(b) and 2672 of title 28 for damages for personal injury.... caused by the negligent or wrongful act or omission of any physician.... of the armed forces.... while acting within the scope of his duties or employment.... shall hereafter be exclusive of any other civil action....
(f) The head of the agency concerned may.... hold harmless or provide liability insurance for

any person described in subsection (a) for damages for personal injury.... caused by such person's negligent or wrongful act or omission in the performance of medical.... care functions.... while acting within the scope of such person's duties if such person is.... detailed for service other than a Federal department.... if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of titled 28, for such damage or injury.

§ 2679(d)(1), without regard to whether the FTCA ultimately will permit recovery against the Government. *Id.* at 166, 111 S.Ct. at 1185.

In support of her contention that Captain Moore was a borrowed servant, Plaintiff's relies on a decision wherein, under Massachusetts' law, the physician was found to be a borrowed servant of the hospital. However, Alabama law does not support the contention that Captain Moore was a borrowed servant of the University. In *Jeffrey Manufacturing Company v. Hannah, supra,* the Alabama Supreme Court addressed borrowed or loaned servants as follows:

> [w]e shall not attempt to discuss the decisions of this and other courts in this field. It seems quite generally that in order to transfer the employer-employee relationship from the general employer to the one to whom the employee is loaned there must be some consensual relationship between the loaned employee and the employer whose service he enters sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is necessarily created, particularly where, as here, the employee was assured of his continuing status as an employee of the general employer and was given the new assignment for the purpose of becoming better equipped to perform services for the general employer.

*Jeffrey,* 268 Ala. at 265–66, 105 So.2d at 674–75 (*citing Rhinelander Paper Co. v. Industrial Commission,* 206 Wis. 215, 239 N.W. 412 (1931); *Ryan v. Twin City Wholesale Grocer Co.,* 210 Minn. 21, 297 N.W. 705 (1941)). The court held that the master is the one who has the supreme choice, control and direction of the servant, and the fact that the borrower gives information and directions to the servant as to details of work or the manner of doing the work does not make the servant of the general employer the servant of the borrower. *Id.* (*quoting United States Steel Corp. v. Mathews,* 261 Ala. 120, 73 So.2d 239 (1954)).

In the case *sub judice,* Captain Moore was ordered by the Air Force to USAMC for thirty days for the purpose of gaining skill and experience to be used as a part of his duties as an Air Force surgeon. The Air Force retained control and direction over Captain Moore in that Captain Moore was at USAMC at the command of the Air Force for the sole purpose of becoming better equipped to perform services for the Air Force. Captain Moore was paid by the Air Force and continued to receive all of his military benefits while at USAMC. Moreover, unlike the facts in *Afonso,* the Air Force retained immediate supervision and control over Captain Moore, and the Keesler Medical Center Director was an active participant in the training program with the University. Accordingly, the undersigned finds that Captain Moore was not a borrowed servant at the time of the alleged incident.

■ Alternatively, Plaintiff argues that Captain Moore was an independent contractor at the time of the alleged injury to Latrecia Perry. In support of this argument, Plaintiff relies on *Brillant v. Royal,* 582 So.2d 512 (Ala.1991). In *Brillant,* the physician in question, Dr. Royal, was not a member of the military. *Brillant,* 582 So.2d at 516. Rather, he was a physician under a contract with Sterling Medical Associates; the contract specifically stated that Dr. Royal was an independent contractor, could be employed elsewhere as a doctor and was to be paid by Sterling, not the Government. *Id.* Sterling was under a contract with Lyster Army Hospital to provide medical services to that facility. *Id.* The contract between Sterling and Lyster clearly stated that Sterling would perform as an independent contractor and not as an employee of the Government. *Id.* at 516 n. 4. The Army had no control over Dr. Royal whatsoever. Given the foregoing facts, the Alabama Supreme Court concluded that Dr. Royal was an independent contractor. *Id.* at 516. Indeed, it is the reservation of a right of control by the principal, and not the actual exercise of control, that determines the status of the relationship. *Shaw v. C.B. & E., Inc.,* 630 So.2d 401, 403 (Ala.1993).

The case *sub judice* is not factually comparable to *Brillant.* Here, Captain Moore was ordered to attend training at USAMC for the

purpose of obtaining experience in managing burn cases. At all times during his training at USAMC, Captain Moore was an active duty officer with the United States Air Force, and continued to receive full military pay, allowances and other military benefits. Captain Moore remained subject to the Uniform Code of Military Justice and all other Air Force Regulations during his training. Captain Moore was under the *joint* immediate supervision of the University program director *and* the Keesler program director. The Air Force was responsible under the agreement for any emergency care that Captain Moore might receive in the event of on the job injury or illness. Significantly, the agreement between Keesler and the University clearly states that Captain Moore would remain an employee of the United States and would be performing duties within the course and scope of his federal employment. The undersigned finds that Captain Moore was not acting as independent contractor while at USAMC or at the time of the alleged negligent act.

Based on the foregoing, the undersigned finds that Captain Moore was acting within the scope of his employment as an active duty Air Force officer at the time of the alleged injury to Latrecia Perry. Considering all of the above factors, it is clear that Captain Moore was acting on behalf of the United States Air Force. He was acting in the furtherance of the interests of his employer, the United States Air Force, by increasing his skills so that he could better perform his duties as an Air Force surgeon; the Air Force itself deemed the training and learned skills to be invaluable. Captain Moore was performing the duties not only assigned but *ordered* to him by his employer, the United States.

Plaintiff cites several other cases in support of her contention that Captain Moore was not acting within the scope of his federal employment at the time of the alleged incident. *See Anderson v. O'Donoghue,* 677

P.2d 648 (Ok.1983); *Newman v. Soballe, supra; Burchfield v. Regents of the University of Colorado,* 516 F.Supp. 1301 (D.Col.1981); and *Bass v. Parsons,* 577 F.Supp. 944 (S.D.W.V.1984). All of these cases were decided *before* the Supreme Court's ruling in *Smith,* and use the same or similar rationale found in *Afonso,* detailing the legislative history of the Gonzalez Act. As discussed above, each of these cases, like *Afonso,* have been effectively overruled by *Smith* and rendered inapplicable by the 1988 Liability Reform Act amendment to the FTCA. With regard to *Newman,* Plaintiff concedes that the holding in that case was abrogated by the decision in *Smith.* However, Plaintiff argues that this Court should still find determinative *Newman*'s analysis of the legislative histories of the acts.

The Supreme Court granted certiorari in *Smith* for the purpose of resolving the dispute between the circuits over the FTCA's coverage. The Ninth Circuit relied on the rationale of *Newman* when rendering its decision in *Smith. See Smith* 499 U.S. at 165, 111 S.Ct. at 1184, n. 6. That decision by the Ninth Circuit was overturned by the Supreme Court, thus, the rationale was rejected as well. Moreover, the Court of Appeals for this Circuit has specifically recognized that *Newman* is "no longer good law," in light of the Supreme Court's decision in *Smith. Nadler v. Mann,* 951 F.2d 301, 305 (11th Cir.1992). Accordingly, the undersigned rejects Plaintiff's contention that the rational of *Newman* is any way binding on this Court.

Next, Plaintiff argues that Defendant's removal of this action from state court was untimely under 28 U.S.C. §§ 1442(a) and 1446(b), and therefore, this action is due to be remanded to state court. Plaintiff is correct in her assertion that § 1442(a) provides for the removal of an action against a federal officer and that § 1446(b) requires that the removal be accomplished within thirty days of the federal officer's receipt of the complaint.[3] However, this case was removed

---

**3.** § 1442(a) provides in relevant part that, "[a] civil action.... commenced in a State court against any of the following persons may be removed by them to the District Court of the United States ... (1) Any officer of the United

States or any agency thereof...." Removal under § 1442(a) must be done within the time limits imposed by the removal procedure statute, § 1446(b) which states in relevant part that, "[t]he notice of removal of a civil action....

pursuant to 28 U.S.C. § 2679(d)(2), set forth hereinabove, which provides that removal may take place "at any time before trial." In the case *sub judice*, the Notice of Removal was filed on February 13, 1996, long before there was a trial date set in state court. Clearly, the removal was timely and proper under the FTCA. Accordingly, the undersigned finds Plaintiff's timeliness argument to be without merit.

Finally, Plaintiff contends that Captain Moore waived his official immunity defense when he filed an answer in state court and failed to assert the affirmative defense of lack of jurisdiction over the person in accordance with Rule 12(b)(2) of the Alabama Rules of Civil Procedure. Plaintiff further contends that since Captain Moore did not raise the defense of lack of personal jurisdiction in his answer, that defense be should deemed waived. Essentially, Plaintiff argues that Captain Moore has submitted to the jurisdiction of the state court, and cannot now be dismissed as a defendant through the substitution of the United States on his behalf.

 As stated above, this case was properly removed pursuant to 28 U.S.C. § 2679(d)(2). The FTCA, as codified in § 2679(d)(2), states that the United States may remove a case at any time before trial; there are no other requirements for or limitations on the removal of a case under § 2679(d)(2). Moreover, the Eleventh Circuit has held that when a federal employee is found to be acting within the scope of his or her federal employment at the time of the alleged incident, the United States *shall* be substituted as the sole defendant pursuant to 28 U.S.C. § 2679(d)(1). *See Smith, supra.* Under such circumstances, the only remedy against the United States government in tort is the FTCA. *See* 28 U.S.C. § 2679(b)(1).

 Because of the operation of § 2679(d)(1), Plaintiff's argument that Captain Moore waived his immunity defense is of no moment since the real issue is one of sovereign immunity. Sovereign immunity is

shall be filed within thirty days after the receipt by the defendant.... of a copy of the initial

not a defense to be invoked or waived by Captain Moore; sovereign immunity belongs to the sovereign, the United States of America. In fact, the FTCA is a waiver of sovereign immunity *itself* which creates specific conditions under which a party may sue the United States. *See* 28 U.S.C. § 2679(a) and § 1346(b). The Court of Appeals for this Circuit held that waivers of sovereign immunity are to be strictly construed in *Suarez v. United States,* 22 F.3d 1064, 1065 (11th Cir. 1994). Addressing waivers of sovereign immunity, specifically the FTCA, the Eleventh Circuit stated:

> [t]he FTCA is a specific, congressional exception to the general rule of sovereign immunity. It allows the government to be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government. Sovereign immunity can be waived only by the sovereign, and the circumstances of its waiver must be scrupulously observed, and not expanded, by the courts.

*Suarez,* 22 F.3d at 1065 (*citing United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979)).

In the case *sub judice*, Captain Moore was acting within the scope of his employment as an Air Force officer at the time of the alleged negligence. Captain Moore was served with Plaintiff's complaint on December 18, 1995. He wrote the United States Air Force about the lawsuit on January 17, 1996, and the removal petition was filed on February 13, 1996, well before a trial was scheduled in the action. Under such circumstances, the case was properly removed to federal district court, and the United States was properly substituted as the sole defendant pursuant to the mandates of the FTCA. Regardless of Captain Moore's response to the pleadings filed in state court, short of actually going to trial, the case must proceed in federal district court with the United States as the sole defendant. Not only could Captain Moore not have waived an immunity defense in his answer to Plaintiff's complaint, Captain Moore's answer and the content thereof are

pleadings...."

irrelevant since the immunity provisions of the FTCA do not exist for the protection of individual federal employees but exist instead for the protection of the federal government.

Accordingly, the undersigned finds Plaintiff's contention that Captain Moore waived his official immunity defense when he filed an answer in state court and failed to assert the affirmative defense of lack of jurisdiction over the person to be without merit.

 Specifically mandating that a plaintiff must exhaust his or her administrative remedies before a lawsuit may be filed, the FTCA states:

> An action *shall* not be instituted upon a claim against the United States for money damages.... caused by the negligent or wrongful acts or omissions of any employee of the Government while acting within the scope of his office or employment, unless the claimant *shall* have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency....

28 U.S.C. § 2675(a), in relevant part (emphasis added). As such, the federal courts may not exercise jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency. *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir.1994) (*citing* 28 U.S.C. § 2675(a)); *see also United States v. Burzynski Cancer Research Institute*, 819 F.2d 1301, 1306 (5th Cir.1987) (FTCA requires filing an administrative claim for relief as a jurisdictional prerequisite to the filing of suit). Because it is a jurisdictional prerequisite, the filing of a claim under the FTCA cannot be waived. *Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir.1981). When no such claim has been filed with the appropriate administrative agency, a district court is without jurisdiction to hear the case, and dismissal for lack of subject matter jurisdiction is mandated. *Suarez*, 22 F.3d at 1065; *Burzynski Cancer Research Institute*, 819 F.2d at 1306. *See also Sullivan v. U.S.*, 21 F.3d 198 (7th Cir.1994) (when United States properly substituted as defendant, Westfall/Liability Reform Act requires dismissal of suit without prejudice for lack of subject matter jurisdic-

tion based on the plaintiff's failure to exhaust administrative remedies).

In the case *sub judice,* Captain Moore was acting within the scope of his employment as a United States Government employee at the time of the alleged injury to Latrecia Perry. As such, the action was properly removed from state court and the United States was properly substituted as the sole defendant in accordance with the FTCA and the Liability Reform Act. Therefore, Plaintiff's Motion to Remand this action to state court is due to be denied. Moreover, since Plaintiff has failed to first exhaust her administrative remedies by filing a claim under the FTCA, this Court is without jurisdiction over the subject matter in this case and Defendant's Motion to Dismiss this action for lack of subject matter jurisdiction is due to be granted.

*Conclusion*

Upon consideration of all the matters presented, and for the reasons set forth above, the undersigned finds that Defendant's Motion to Dismiss is due to be granted and Plaintiffs' Motion to Remand is due to be denied. It is therefore ORDERED that Defendant's Motion to Dismiss be GRANTED, Plaintiff's Motion to Remand be DENIED, and this action be DISMISSED WITHOUT PREJUDICE. The Court will by separate document enter judgment in accordance with this Order.